Donald N. David, Esq.
Keith Costa, Esq.
AKERMAN SENTERFITT LLP
Attorneys for Daniel Gordon
335 Madison Avenue, 26th Floor
New York, N.Y. 10017-4636
Tel.: (212) 880-3800

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

In re

DANIEL GORDON,                                     Chapter 7

                                                   Case No. 09-16230(AJG)

          Debtor.

-----------------------------------------------------------------x

ANGELA G. TESE-MILNER, TRUSTEE
OF THE ESTATE OF DANIEL GORDON,                    Adv. Pro. No. 10-03767(AJG)

          Plaintiff,

     -against-

DANIEL GORDON,

          Defendant

-----------------------------------------------------------------x

### ANSWER TO COMPLAINT OF CHAPTER 7 TRUSTEE SEEKING A JUDGMENT AGAINST DEBTOR DANIEL GORDON

**DANIEL GORDON ("Gordon" or "Debtor"),** the Defendant in the Chapter 7 Proceeding

above-captioned and the Adversary Proceeding submits this ANSWER to the COMPLAINT (the

"Complaint") of Angela Tese-Milner (the "Trustee"), Chapter 7 trustee of the estate of Daniel

Gordon, and respectfully represents:

     1.      Gordon denies the allegations of paragraph 1 of the Complaint and affirmatively

states that rather than alleging relevant factual matter in accordance with the rules governing

pleadings, the Trustee, through her counsel, has engaged in an *ad hominem* attack that is baseless and improper in connection with these allegations and represent nothing more than an attempt to torture and harass Debtor into a settlement, that he cannot fund, by a death of a thousand small cuts.

2.      Gordon denies the allegations of paragraph 2 of the Complaint and affirmatively states that rather than alleging relevant factual matter in accordance with the rules governing pleadings, the Trustee, through her counsel, has engaged in an *ad hominem* attack that is baseless and improper in connection with these allegations.

3.      Gordon admits the allegations of paragraph 3 of the Complaint, but affirmatively states that the relief sought is baseless and improper.

4.      Gordon admits the allegations of paragraph 4 of the Complaint.

5.      Gordon admits the allegations of paragraph 5 of the Complaint.

6.      Gordon admits the allegations of paragraph 6 of the Complaint.

7.      Gordon admits the allegations of paragraph 7 of the Complaint.

8.      Gordon admits the allegations of paragraph 8 of the Complaint.

9.      Gordon admits the allegations of paragraph 9 of the Complaint.

10.     Gordon admits the allegations of paragraph 10 of the Complaint.

11.     Gordon admits the allegations of paragraph 11 of the Complaint.

12.     Gordon admits the allegations of paragraph 12 of the Complaint.

13.     Gordon admits the allegations of paragraph 13 of the Complaint.

14.     Gordon repeats and realleges his responses to paragraphs 1 through 13 of the Complaint as if fully set forth herein.

15.     Gordon denies the allegations of paragraph 15 of the Complaint insofar as those allegations alleged that Debtor owned and controlled the Brighton Road Property, as defined by the

Trustee, and failed to disclose ownership of that property. Gordon affirmatively states: (a) the Brighton Road Property is owned by CC Brighton Holdings, LLC, a Connecticut limited liability company ("CC Brighton"). The sole member of CC Brighton is MS Carriage Development, LLC ("MS Carriage"). Debtor disclosed his ownership of MS Carriage Development, LLC in the schedules filed with his Chapter 7 Petition (Ex. A); (b) Debtor also disclosed the ownership structure od CC Brighton Holdings LLC at the initial 341 meeting; (c) on March 4, 2010, Debtor wrote to Peter Evans the attorney who represented CC Brighton in its purchase of the Brighton Road Property and requested that Mr. Evans forward "all relevant documents in [his] transaction files relating to the purchase" of the Brighton Road Property. Yann Geron, Trustee's counsel, was copied on that email; (d) on March 17, 2010, Peter Evans sent a series of emails to Yann Geron attached to which were the relevant documents relating to CC Brighton's ownership in the Brighton Road Property (Ex. B); (e) on March 17, 2010, the Trustee and the Debtor entered into a Stipulation with respect to Trustee's Motion To Sell The Brighton Road Property Free and Clear of All Liens, Claims and Encumbrances (Ex. C); and (f) on September 20, 2010, Debtor provided the Trustee with an affidavit which *inter alia* confirmed a wire transfer in the amount of $1,303,745.88 was made in September 2006 to Rogin Nassau, LLC to fund the purchase of the Brighton Road Property. Attached to the affidavit was the same documents provided to Yann Geron by Peter Evans on March 17, 2010 (Ex. D).

16.    Gordon admits the allegations of paragraph 16 of the Complaint, but incorporates the affirmative allegations of his response to paragraph 15 above and affirmatively states that there was neither the intent nor the actuality of Debtor concealing the asset which he *did* own, i.e. his interest in MS Carriage Development, LLC, as opposed to the asset that he did not own, i.e., the Brighton Road Property.

17.    Gordon denies the conclusory allegations of paragraph 17 of the Complaint.

18.    Gordon denies the conclusory allegations of paragraph 18 of the Complaint and affirmatively states that at the time of the filing of the bankruptcy petition, Debtor did *not* have an outstanding receivable due from Allstar Capital, Inc., but rather that Allstar had already repaid the loan to it by way of payments made as directed by Debtor for the benefit of Wurk Environments, LLC, an entity in which Debtor had an interest and these transfers were reflected on the books of Wurk Environments as an increase in Debtor's capital account.  Debtor had noted the transfer to Wurk Environments LLC on his Amended Statement of Financial Affairs.

19.    Gordon denies the allegations of paragraph 19 of the Complaint and affirmatively alleges that Wurk Times Square LLC did not owe Debtor $15,000.   Debtor further affirmatively alleges that the Trustee is deliberately attempting to confuse matters by referring to an alleged receivable owed by Wurk Time Square ("Wurk TS") as the "Wurk Receivable," and ignoring the existence of the parent entity Wurk Environments, LLC.

20.    Gordon denies the allegations of paragraph 20 of the Complaint in that there was no receivable to disclose.

21.    Gordon denies the allegations of paragraph 21 of the Complaint and affirmatively state that Debtor's 2008 Federal Income Tax Return, filed prior to the filing of the Bankruptcy Petition, (Ex. E) showed an overpayment of $158,978 and, upon advice of counsel, Debtor applied such overpayment to subsequent tax obligations. Debtor also affirmatively states that, in light of the pending dispute with IRS, there is no likelihood that IRS would issue any refund to Debtor.

22.    Gordon denies the allegations of paragraph 22 of the Complaint and repeats the affirmative allegations made in connection with paragraph 21 of the Complaint.

23.    Gordon denies the allegations of paragraph 23 of the Complaint and repeats the

4

affirmative allegations made in connection with paragraph 21 of the Complaint.

24.    Gordon denies the allegations of paragraph 24 of the Complaint.

25.    Gordon denies the allegations of paragraph 25 of the Complaint.

26.    Gordon repeats and realleges his responses to paragraphs 1 through 25 o f the Complaint as if fully set forth herein.

27.    Gordon denies the allegations of paragraph 27 of the Complaint and affirmatively states that in or about October 22, 2008, prior to the filing of the Petition, a $2 million draw-down on a home equity line of credit ("HELOC"), which was in the name of both Daniel and Laura Gordon ("Laura") and secured by an apartment then in the possession of Laura, was taken by Gordon and loaned to Allstar; that, upon information and belief, Allstar then lent this money to Urban Muse; this loan, as noted in the response to paragraph 17 of the Complaint, was repaid by Allstar; and this draw-down was the predicate for litigation between Debtor and Laura in the Supreme Court of the State of New York, and was the basis for a judgment awarded to Laura, against Debtor, in said court.

28.    Gordon denies the allegations of paragraph 28 of the Complaint and affirmatively alleges that, prior to the filing of the Debtor's Petition, in or about May 2009 Allstar repaid Gordon and Gordon directed that the repayment of the loan by Gordon be made in the form of transfers to Wurk TS (a wholly owned subsidiary of Wurk Environments, LLC), Citadel Construction Corp. and others. The books and records of Wurk Environments LLC, of which Gordon is the sole member, reflected such transfers as an increase in the capital account of Gordon. These transfers were also reflected on Gordon's bankruptcy schedules.

29.    Gordon denies the allegations of paragraph 29 of the Complaint and affirmatively states that all payments made on behalf of Wurk TS were treated as increases in Debtor's capital

account in Wurk TS' parent, Wurk Environments.

    30.    Gordon denies the allegations of paragraph 30 of the Complaint and affirmatively states that the Trustee has mistakenly referenced both prior specific transfers made on behalf of Wurk Environments and Wurk TS and the cumulative increase in Debtor's capital contribution to Wurk Environments, used to meet the obligations of Wurk TS, comprising the proceeds of the repayment of the loan made by Debtor to Allstar.

    31.    Gordon denies the allegations of paragraph 31 of the Complaint and affirmatively references the Court to the previous responses in connection with each transfer. Further, Debtor affirmatively alleges that the payments made to Wurk Environment, resulting from the proceeds of the repayment of the loan by Allstar, and used for the benefit of Wurk TS, a wholly-owned entity of Wurk Environments, are reflected on Debtor's financial records as part of the capital account of Wurk Environments which Debtor has set forth in his schedules filed with this Court.

    32.    Gordon denies the allegations of paragraph 32 of the Complaint, repeats the affirmative allegations made in connection with paragraph 31 of the Complaint, and affirmatively states that such payments were made in ordinary course of Debtor's businesses and for the purpose of advancing the interests – and developing the value – of such businesses.

    33.    Gordon denies the allegations of paragraph 33 of the Complaint.

    34.    Gordon repeats and realleges his responses to paragraphs 1 through 33 of the Complaint as if fully set forth herein.

    35.    Gordon denies the allegations of paragraph 35 of the Complaint and affirmatively states that the Trustee has requested bank statement and/or checks for an unreasonable period of time, that Debtor has made every effort to comply with nonetheless, producing thousands of pages of bank documents. Further, Debtor affirmatively states that he has offered to sign authorizations

allowing the Trustee to obtain documents directly from the banks at issue, but, upon information and belief, the Trustee has declined to do so because the Trustee has refused to pay the fees associated with the direct production of such materials by the banks.

36.    Gordon d enies the allegations of paragraph 36 of the Complaint, except as to admitting that there are certain checks that Debtor no longer has in his possession. Further, Debtor affirmatively states that he has offered to sign authorizations allowing the Trustee to obtain documents directly from the banks at issue, but, upon information and belief, the Trustee has declined to do so because the Trustee has refused to pay the fees associated with the direct production of such materials by the banks.

37.    Gordon d enies the allegations of paragraph 37 of the Complaint, except as to admitting that there are certain checks that Debtor no longer has in his possession. Further, Debtor affirmatively states that he has offered to sign authorizations allowing the Trustee to obtain documents directly from the banks at issue, but, upon information and belief, the Trustee has declined to do so because the Trustee has refused to pay the fees associated with the direct production of such materials by the banks.

38.    Gordon denies the allegations of paragraph 38 of the Complaint, and affirmatively states that to the extent documents concerning security deposits on leases of the Debtor exist, they have been provided to the Trustee.

39.    Gordon d enies the allegations of paragraph 39 of the Complaint, except as to admitting that there are certain credit card statements that, given their age, Debtor no longer has in his possession. Further, Debtor affirmatively states that he has offered to sign authorizations allowing the Trustee to obtain documents directly from the credit card companies at issue, but, upon information and belief, the Trustee has declined to do so because the Trustee has refused to pay the

fees associated with the direct production of such materials by the credit card companies.

40.     Gordon denies the allegations of paragraph 40 of the Complaint and affirmatively alleges that the Debtor turned over account statements relating to the Signature Bank account to the Trustee, the receipt of which was acknowledged by the Trustee in her email dated February 2, 2010 (Ex. F); in addition, on February 8, 2010 Debtor provided the transfer statement showing the transfer of 22,500 shares of NYMEX stock to the Allstar account. Ex. G.

41.     Gordon denies the allegations of paragraph 41 of the Complaint, and affirmatively alleges that the Trustee received same as evidenced by her email dated February 2, 2010. Ex. F.

42.     Gordon denies the allegations of paragraph 42 of the Complaint.

43.     Gordon denies the allegations of paragraph 43 of the Complaint, and affirmatively states that the Debtor turned over all Signature Bank account statements to the Trustee, including the transfer slip and bank statement showing the $1,430,000 transfer. Ex. H. Further, as with many other documents that the Trustee claims have not been turned over, Debtor turned this document over yet again, on June 20, 2010. Ex. H-1.

44.     Gordon denies the allegations of paragraph 44 of the Complaint and affirmatively states that these funds were used to pay off the credit line in place between Allstar and Signature Bank. The Trustee confirmed receipt of bank statement for the Signature Bank Account by her February 2, 2010 email  (Ex. F), documentation was also provided by way of the email between Gregg Kirschner of Signature and the Debtor, which has been provided to the Trustee (Ex. I), and the production yet again of the Signature 2009 bank statements to the Trustee on June 20, 2010, including the May 2009 statement which shows said withdrawal. Ex. H-1.

45.     Gordon denies the allegations of paragraph 45 of the Complaint and affirmatively alleges as to each of the identified entities: (i) Chesntut Hill: There are no bank account for such

8

entity; (ii)Carolina E. Gordon Trust: the only account statement for this entity are the Schwab and

Fidelity Investment accounts, both of which were turned over to the Trustee and the Trustee

acknowledged receipt of on February 2, 2010 (Ex. F); (iii) Gordon Family I: the bank statement

from Wachovia Bank and Signature bank were turned over and acknowledged by the Trustee (Ex.

F), and there are no other bank or investment accounts for this entity; (v) CEG Goal: as the Trustee

has been repeatedly advised, there are no bank accounts for this entity; (vi) Gordon Children Trust:

as the Trustee has been repeatedly advised, there are no bank accounts for this entity; (vii) Hilltop

Investments: is a Connecticut limited liability company dissolved in 2007, more than two years

prior to the filing of the Petition and, as the Trustee has been repeatedly advised, there are no current

accounts for such entity and information relating to this entity was provided to the Trustee on July 6,

2010. Ex. J.; (viii & ix) Phoenix Capital and Rosedale Cooley: these documents have already been

forwarded to the Trustee and additional documents were forwarded on both June 17, 2010 and

December 14, 2010; (x) Chestnut Hill: The Trustee has already been repeatedly advised that there

are no bank accounts for this entity; (xi) RC Sooner and its affiliates: are not properly the subject of

discovery from the Debtor since they were formed post-Petition and are wholly owned by Allstar.

      46.     Gordon denies the allegations of paragraph 46 of the Complaint and affirmatively

alleges that, to the extent that the identified entities maintain general ledgers, which most of them do

not due to their limited function and purpose, such documents have already been produced to the

Trustee.

      47.     Gordon denies the allegations of paragraph 47 of the Complaint, but affirmatively

states that none of the entities ever maintained cash receipts and disbursements journals, and that the

Trustee has been repeatedly advised of such.

      48.     Gordon denies the allegations of paragraph 48 of the Complaint but affirmatively

states that other than the entities already identified to the Trustee, for which payroll records have been provided, the entities set forth in this paragraph do not have and have never had employees.

49.   Gordon denies the allegations of paragraph 49 of the Complaint and affirmatively states as to the entities listed: (i) Wurk TS: The entity is a single member LLC and is a disregarded entity for tax purpose, its operations being consolidated with the Wurk Environments Tax Return; (ii) Wurk Management: This entity began and ceased operations in 2009. There are no other tax returns due; (iii) Wurk Environments: Provided to the Trustee (Ex. N); (iv) MS Carriage: Entity does not have any taxable activity and, as the Trustee has been repeatedly advised, does not file tax returns. Its sole function is to own the membership interests in CC Brighton Holdings; (v) Gordon Family I: Provided to the Trustee (Ex. N); (vi) Vesey Street Employee Fund: As the Trustee has been repeatedly advised, this is an investment entity sponsored by Merrill Lynch for its employees and former employees. Debtor's relationship to this entity is solely as a limited partner, owning.20875% of the limited partnership. Ex. N; (vii) Carolina E. Gordon Trust: Provided to the Trustee. Ex. N; (viii) Carolina E. Gordon GOAL Trust: As the Trustee has been repeatedly advised, this entity does not have any taxable activity and does not file tax returns; (ix) Gordon Children Trust: Tax return was provided to the Trustee. Ex. N; (x) Gordon Children Life Insurance Trust: As the Trustee has been repeatedly advised, this is the same as the prior entity; (xi) McCann Construction: As the Trustee has been repeatedly advised, this entity does not have any taxable activity; (xii) Phoenix Capital: In 2009, this entity's name was changed to Rosedale Cooley Management Inc, as indicated in documents supplied to the Trustee, and the 2009 tax return for Rosedale has been provided to the Trustee. Ex. N; (xiv) EESONA: this entity's tax return was provided to the Trustee. Ex. N; (xv) Hilltop: This entity was dissolved in 2007, more than two years prior to the filing of the Petition, and the Debtor does not have any financial information relating to

this entity in his possession; (xvi) MBF: As the Trustee has been repeatedly advised, Debtor does

not have any ownership interest in this entity; (xvii) Citadel: Debtor does not possess the books and

records of this company; (xviii) RC Sooner: This entity was formed post-petition; and (xix) CC

Brighton: this entity does not have any taxable activity and does not file tax returns.

50.    Gordon denies the allegations of paragraph 50 of the Complaint and affirmatively

states that Debtor has no certificates of incorporation in his possession that have not been provided

to the Trustee. To the extent that certificates of incorporation or certificates of formation are not

available from Debtor, Debtor has offered to sign any materials required in order to acquire same

from the Secretary of State for the various states in which such entities were formed.

51.    Gordon denies the allegations of paragraph 51 of the Complaint and affirmatively

states that to the extent that the identified entities had shareholders, they have been identified (See,

e.g. Ex. O-1) and as to entities that have members, the Trustee has similarly been repeatedly advised

of the respective structure and ownership interests.

52.    Gordon denies the allegations of paragraph 52 of the Complaint and affirmatively

states that none of the identified entities of which Debtor has knowledge have security accounts for

which statements can be provided.

53.    Gordon denies the allegations of paragraph 53 of the Complaint, and affirmatively

states that the closing occurred six years prior to the filing of the Petition and that the Trustee has

been repeatedly advised that Debtor does not have such documents in his possession, custody or

control.

54.    Gordon denies the allegations of paragraph 54 of the Complaint.

55.    Gordon denies the allegations of paragraph 55 of the Complaint and affirmatively

states that on July 6, 2010 the Trustee was provided with copies of all such IRA account statements.

11

Ex. L.

56.     Gordon denies the allegations of paragraph 56 of the Complaint and affirmatively states that on July 6, 2010 the Trustee was provided with copies of all such IRA account statements. Ex. L.

57.     Gordon denies the allegations of paragraph 57 of the Complaint and affirmatively states that on July 6, 2010 the Trustee was provided with copies of all such IRA account statements. Ex. L.

58.     Gordon denies the allegations of paragraph 58 of the Complaint and affirmatively states that on July 6, 2010 the Trustee was provided with copies of all such IRA account statements. Ex. L.

59.     Gordon denies the allegations of paragraph 59 of the Complaint.

60.     Gordon denies the allegations of paragraph 60 of the Complaint and affirmatively states that the Trustee received and acknowledged receipt of all loan and purchase documents related to both the Range Rover and the Escalade. Ex. F

61.     Gordon denies the allegations of paragraph 61 of the Complaint and affirmatively states that the Trustee received and acknowledged receipt of all loan and purchase documents related to both the Range Rover and the Escalade. Ex. F

62.     Gordon admits the allegations of paragraph 62 of the Complaint, and affirmatively states that Gordon does not have such utility bills in his possession, but has indicated his willingness to provide authorization for the Trustee to obtain such directly from the utility provider, if any.

63.     Gordon denies the allegations of paragraph 63 of the Complaint and affirmatively states that many of the materials that the Trustee seeks are virtually meaningless in terms of determining Debtor's "financial condition and relevant business transactions." Debtor has provided

thousands of pages of documents and, to the extent that he does not possess other documents, has

offered to execute any authorization that the Trustee may need to secure such documents, if they

exist, but the Trustee has refused to do so.

64.    Gordon denies the allegations of paragraph 64 of the Complaint.

65.    Gordon denies the allegations of paragraph 65 of the Complaint.

66.    Gordon respectfully repeats and realleges his responses to paragraphs 1 to 65 as if

set forth fully herein.

67.    Gordon denies the allegations of paragraph 67 of the Complaint and affirmatively

states that he respectfully incorporates each and every one of his references to the specific

transactions and entities as set forth hereinbefore, as if set forth herein.  Debtor also notes that, to the

extent that there were some instances brought to his attention where he may have inadvertently

omitted a minor item, he has filed amended schedules correcting such item.  The Trustee was

informed on a number of occasions by Debtor's counsel (Del Virginia) of the intent to continue to

update and amend Schedules as necessary.

68.    Gordon denies the allegations of paragraph 68 of the Complaint.

69.    Gordon respectfully repeats and realleges his responses to paragraphs 1 to 67 as if

set forth fully herein.

70.    Gordon admits the allegations of paragraph 70 of the Complaint and affirmatively

states that Debtor has not only produced every responsive documents in his possession, custody

and control, amounting to thousands of pages, but has offered to execute any authorizations the

Trustee might request and, further, has repeatedly asked for the Trustee to *specifically* identify

any documents allegedly unproduced so they could be dealt with appropriately.  Prior to the fil-

13

ing of the Trustee's complaint, Trustee neglected to provide any list or request for such missing documents.

71.    Gordon denies the allegations of paragraph 71 of the Complaint.

72.    Gordon admits the allegations of paragraph 72 of the Complaint.

73.    Gordon respectfully repeats and realleges his responses to paragraphs 1 to 72 as if set forth fully herein.

74.    Gordon denies the allegations of paragraph 74 of the Complaint insofar as it mischaracterizes the contents of a document.

75.    Gordon denies the allegations of paragraph 75 of the Complaint.

76.    Gordon denies the allegations of paragraph 76 of the Complaint and affirmatively states that the Debtor provided an affidavit detailing the receipt and disbursements of all funds derived and disposed of relating to the NYMEX Stock Proceeds and, further, has provided numerous documents in support thereof. Ex. D.

77.    Gordon denies the allegations of paragraph 77 of the Complaint and refers to and incorporates the affirmative allegations in respond to paragraph 76.

78.    Gordon denies the allegations of paragraph 78 of the Complaint and refers to and incorporates the affirmative allegations in respond to paragraph 76.

79.    Gordon admits the allegations of paragraph 79 of the Complaint.

80.    Gordon denies the allegations of paragraph 80 of the Complaint.

81.    Gordon denies the allegations of paragraph 81 of the Complaint.

82.    Gordon respectfully repeats and realleges his responses to paragraphs 1 to 81 as if set forth fully herein.

14

83.    Gordon denies the allegations of paragraph 83 of the Complaint and respectfully refers the Court to the Order at issue, rather than the conclusory statement thereof by the Trustee.

84.    Gordon denies the allegations of paragraph 84 of the Complaint.

85.    Gordon denies the allegations of paragraph 85 of the Complaint and affirmatively states that he has fully complied with the Order at issue.

86.    Gordon respectfully repeats and realleges his responses to paragraphs 1 to 85 as if set forth fully herein in response to the paragraph numbered 78 on p. 17 of the Complaint.[1]

87.    Gordon admits the allegations of paragraph 87 of the Complaint, numbered as paragraph 79.

88.    Gordon denies the allegations of paragraph 88, numbered as paragraph 80 of the Complaint, upon information belief, disputing that Glauco Lolli-Ghetti is the principal owner of Urban Muse.

89.    Gordon denies the allegations of paragraph 89 of the Complaint, numbered at paragraph 81, and affirmatively states that Allstar made the loan to Urban Muse as set forth hereinbefore.

90.    Gordon denies the allegations of paragraph 90 of the Complaint, numbered as paragraph 82.

91.    Gordon admits the allegations of paragraph 91 of the Complaint, numbered as paragraph 83.

92.    Gordon denies the allegations of paragraph 92 of the Complaint, numbered as paragraph 84, and affirmatively states that Allstar repaid Debtor by making payments as directed by Debtor on behalf of Wurk Environments and Wurk TS, and, further, that Urban Muse repaid Allstar.

15

93.     Gordon denies the allegations of paragraph 93 of the Complaint, numbered as paragraph 85.

94.     Gordon denies the allegations of paragraph 95 of the Complaint, numbered as paragraph 86.

95.     Gordon denies the allegations of paragraph 96 of the Complaint, numbered as paragraph 87.

96.     Gordon denies the allegations of paragraph 97 of the Complaint, numbered as paragraph 88.

97.     Gordon respectfully repeats and realleges his responses to paragraphs 1 to 96 as if set forth fully herein.

98.     Gordon denies the allegations of paragraph 99 of the Complaint, numbered as paragraph 90.

99.     Gordon denies the allegations of paragraph 100 of the Complaint, numbered as paragraph 91.

100.    Gordon denies the allegations of paragraph 101 of the Complaint, numbered as paragraph 92.

101.    Gordon denies that there is any basis for the Trustee to reserve its rights against Gordon as set forth in paragraph 101 of the Complaint, numbered as 86.

**WHEREFORE,** Defendant Gordon respectfully requests that this Court issue a judgment:

1.  Dismissing all claims and causes of action asserted against him by Plaintiff Trustee; and

2.  For such other and further relief as to the Court may seem just and proper

---

[1]    Unless otherwise noted, the paragraphs in this answer proceed sequentially.

DATED:      New York, New York
            December 15, 2010

                        **AKERMAN SENTERFITT LLP**


                        By:_____
                        Donald N. David, Esquire
                        335 Madison Avenue, Suite 2600
                        New York, New York 10017-4636
                        (212) 880-3800

                        *Attorneys for Defendant*
                        *Daniel Gordon.*

17