AKERMAN SENTERFITT LLP

Donald N. David
335 Madison Avenue, 26th Floor
New York, New York 10017 (212) 880-3856
*Attorneys for Debtor Daniel Gordon*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                                  :

In re                               :

                                  :        Chapter 7

DANIEL GORDON,                :

                                  :        Case No. 09-16230 (REG)

                         Debtor.     :

                                  :

-----------------------------------------------------------x

ANGELA G. TESE-MILNER, TRUSTEE  :
OF THE ESTATE OF DANIEL GORDON,  :

                                  :

                      Plaintiff,  :

                                  :

        -against-                  :        Adv. Pro. No. 10-03767 (REG)

                                  :

DANIEL GORDON,                :

                                  :

                      Defendant.  :

-----------------------------------------------------------x

**RESPONSE TO TRUSTEE'S MOTION IN LIMINE TO PRECLUDE THE
DEBTOR FROM INTRODUCING THE TESTIMONY OF ANGELA TESE-
MILNER AND FROM CALLING HER AS WITNESSES AT TRIAL.**

    Daniel Gordon, the above referenced debtor/defendant (the "Debtor"), by his un-

dersigned attorneys, AKERMAN SENTERFITT LLP, for his objection/response (the

"Response") to the motion *in limine* (the "Motion") pursuant to Rules 7026 and 9017 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") of Angela Tese-

Milner (the "Trustee"), as chapter 7 trustee of the estate seeking to preclude the Debtor

from introducing the testimony of the Trustee and calling her as a witness at trial, respect-

fully sets forth and represents:

## PRELIMINARY STATEMENT.

The Trustee's litigation strategy demonstrates that she was willfully negligent, bi-

ased against the Debtor, or attempting to extract a settlement from the Debtor.[1] After ex-

tensive document production, the Trustee filed the initial complaint (the "Original Com-

plaint") which was composed of nine counts with allegations that were simply not sus-

tainable. Following the Debtor's formal request for permission to file a summary judg-

ment motion, the Trustee amended the Complaint (the "Amended Complaint"), removing

six Counts and a portion of another Count from the Original Complaint. Further, preju-

dicing the Debtor, the Trustee waited until three weeks before the scheduled trial to file

the Amended Complaint

This Motion alleges that "[b]ecause this is a discharge trial, which ultimately rests

upon what the Debtor did or did not do and the Debtor's intent not anyone else's under-

standing of that intent, any facts or information as to what the Trustee knew or should

have known are entirely irrelevant to the merits of the underlying action." (Motion, ¶5).

However, if the genesis of the Trustee's objection to discharge was her thinly veiled at-

tempt to 'shakedown' the Debtor for a settlement, as the Debtor contends, this places the

---

[1]     This Court was not involved in the events surrounding the commencement of this
adversary proceeding, as at that time the matter was being handled by Judge Gonzalez.
However, Debtor will be prepared at the trial to show that the Trustee served the Original
Complaint at a time when Allstar Capital had received a substantial judgment in state
court against Eddy Curry. The Trustee was attempting to prevent Allstar from actually
receiving such funds and disbursing them to its creditors, absent a settlement by which
the Trustee received a portion of the funds. It is Debtor's contention that the Trustee
commenced the instant adversary proceeding as part of her attempt to force Debtor to set-
tle with her.

Trustee and Complaint's allegations in a different light. To that end, the Court is certainly

entitled to examine the allegations that the Trustee made in her adversary complaint and

determine whether they were so patently flawed and made in bad faith that the Court may

infer an improper motive. To that end, the Trustee's actions, knowledge and due diligence

in making such allegations is certainly relevant.

Further, Debtor has readily acknowledged that he made some inadvertent, non-

material errors in scheduling assets and liabilities, such as the failure to initially schedule

his guarantee of an automobile lease held by an entity.  But, such errors, aside from being

corrected in amended filings, may well – as alleged by Debtor – be explained by time

pressures and the unavailability of documentation at that time the schedules were initially

prepared, rather than an improper intent.  To that end, it would be appropriate for the

Trustee to be called upon to testify in connection with Debtor's contention that the Trus-

tee's conduct materially contributed to such omissions when she initially refused Debtor's

request for a 30-day extension of time to file such schedules.

Finally, as a fiduciary, the Trustee, should have no objections to testifying as to

matters that will shed light on her actions and her motivation for taking the drastic step of

seeking to deny Debtor a discharge.[2]

---

2    The allegations in the Complaint and Amended Complaint clearly allege that the
Debtor (i) concealed property of the estate with intent to hinder, delay, or defraud a credi-
tor or the Trustee; (ii) transferred property of the estate with intent to hinder, delay, or
defraud a creditor or the Trustee; and (iii) knowingly and fraudulently made false oaths in
connection with his bankruptcy proceeding.. Now, the Trustee reveals that she brought
the "instant proceeding because her investigation revealed several items that she believes
may warrant a denial of the Debtor's discharge." (Motion, ¶9)(emphasis added).  This is a
cavalier attitude where "failure to achieve discharge [will] amount to a financial death
sentence for the Debtor."*In re Hyman* 502 F.3d 61, 66 (2d Cir. 2007). Maintaining her
objection to discharge in view of what has been developed, as she implicitly recognizes
that many of her original claims and causes of action were without basis, is inconsistent

## ARGUMENT/LEGAL AUTHORITY

**I.    AS A FIDUCIARY AND OFFICER OF THIS COURT THE TRUSTEE'S MOTIVES IN SEEKING TO DENY DEBTOR'S DISCHARGE ARE RELEVANT AND PROPERLY CAN BE CONSIDERED BY THIS COURT**

1.    The Trustee has tried to use her fiduciary role as a shield to prevent any inquiry into her motivation for commencing this adversary proceeding, as well as making the unfounded and patently flawed allegations contained in the Original Complaint. In so doing, she turns the obligation owed to the Court and Debtor on its head.

2.    Thus, in seeking to avoid testifying, she alleges that "[t]he Trustee is a fiduciary, and her motives are the mandates decreed by the Bankruptcy Code. Other 'motives' outside the Bankruptcy Code are neither present nor relevant." (Motion, ¶9). However, precisely because she is a fiduciary and has a fiduciary duty to the Debtor her motives are relevant. "[A trustee] must treat the debtor in accordance with the high standards of conduct expected from fiduciaries in bankruptcy." *In re Vebeliunas* 231 B.R. 181, 192 (Bankr. S.D.N.Y. 1999). Similarly, "the Chapter 7 trustee is an officer of the court and owes a fiduciary duty both to the debtor and to the creditors as a group." *Germain v. The Connecticut National Bank,* 988 F.2d 1323, 1330 n. 8 (2d Cir.1993). A biased Trustee objecting to "the debtor's discharge will undoubtedly engender public suspicion of the integrity of the judicial process." *In re Vebeliunas* 231 B.R. 181,196.

3.    Clearly then, the Second Circuit does not view the Trustee's motivation and possible bias as being entirely irrelevant to the merits of the underlying action.

---

with her fiduciary duty as a Trustee and Bankruptcy Rule 9011. This in itself is a sufficient basis to require the Trustee to testify.

In such a context, if the Trustee makes patently false or baseless allegations, even if subsequently withdrawn three weeks before trial under the pressure of a proposed motion for summary judgment, her actions should be subject to judicial scrutiny.

4.      For example, in the instant proceeding the Original Complaint sought to deny Debtor a discharge, *inter alia,* because of his failure to provide copies of the Certificates of Incorporation for entities that were identified as being LLCs. As a matter of law, of course, LLCs do not have Certificates of Incorporation. Thus, such demand should not have been made in the first place.

5.      However, assuming that the Trustee and her counsel may not have been aware of such, before the Original Complaint was served and filed, Debtor called such to their attention as part of his compliance with discovery.

6.      Not only did the Trustee ignore such caveat, when she filed the Original Complaint she included among her causes of action the claim that the Debtor's failure to supply the Certificate of Incorporation was grounds for denying his discharge.

7.      The Trustee was then deposed and specifically asked about such allegations, pointedly calling to her attention the patent error, but she did nothing to correct it – instead hiding behind a claim of reliance on her counsel.

8.      It was not until Debtor threatened to move for summary judgment that the Trustee finally served an amended complaint, three weeks before trial.

9.      Similarly, in the Original Complaint the Trustee alleged that the Debtor had failed to schedule an ownership interest in a series of entities formed in Nevada. It was clear that the Trustee has not done even the most basic of due diligence in

connection with that claim because of the entities had been formed subsequent to the filing of the Petition.

10.    Again, this was pointed out to the Trustee and she was supplied with copies of documents substantiating the formation dates.

11.    Yet, she nonetheless made such allegations part of her claim that the Debtor had attempted to hide assets and, when faced with the documentation to the contrary, just chose to ignore it.  She also refused to correct her claims when confronted at her deposition, and did nothing in that connection until faced with a potential motion for summary judgment.

12.    Surely, the Debtor is entitled to inquire, and the Court is entitled to consider, the Trustee's motivation in first making these patently erroneous allegations in the first place, and her subsequent refusal to correct them until faced with a motion for summary judgment.

13.    Simply put, what was she hiding.


## II.    THE TRUSTEE'S LITIGATION TACTICS PROVIDE AN AMPLE BASIS FOR HER TESTIFY.

14.    At the outset of the bankruptcy proceeding, the Debtor sought an extension (the "Extension") of time for approximately 30 days to file his schedules because (i) "[t]he Debtor's petition was filed on an expedited basis owing to a concern that the Debtor is involved in a number of lawsuits that are stayed as a result of the Petition;" and (ii) "[t]he Debtor [had] complex financial dealings which require additional time to

properly reflect these dealings on the Schedules." (Application to Extend Time to File Schedules ¶5, ECF #8).

15.    The Trustee objected to this extension. (ECF #10). The Debtor respectfully requests the Court take judicial notice that motions to extend time to object are generally not objected to by a Chapter 7 Trustee. Ultimately, the Trustee consented to an approximately a three week extension..

16.    If the Debtor had more time to complete his Schedules and marshal the underlying documents, certain omissions contained in the original Schedules would have never occurred and he would have not been required to file amended Schedules.

17.    Thus, the Trustee's opposition to the Extension played a significant role in certain inadvertent omissions from the Schedules for which the Trustee now seeks to deny the Debtor's discharge.

## III.    THE STEPS TAKEN BY THE TRUSTEE TO AVOID TESTIFYING, CALL INTO QUESTION HER MOTIVATIONS FOR NOT TESTIFYING.

18.    The Trustee has taken drastic steps to avoid testifying, including withdrawing certain causes of action that would have clearly required her testimony. Thus, when the Original Complaint was filed there were clearly counts that rested upon what the Trustee did or did not do and the Trustee's intent.

19.    For example, Count V of the original Complaint, which has been removed in the Amended Complaint, sought to deny discharge for withholding information and documents pursuant to 11 U.S.C. §727(a)(5). Clearly, to sustain such a claim it would have been necessary for the Trustee or someone on her behalf to have gotten on

the stand, identified the information which had allegedly been requested, and then affirm-

atively testify that such materials had not been produced.

20.    Conveniently, when faced with testifying, the Trustee dropped this

Count This raises the question of why the Trustee refuses to testify.


## IV.    THIS MOTION IS DEFECTIVE IN THAT IT MAKES FACTUAL ALLE-GATIONS THAT REQUIRE THE TRUSTEE'S TESTIMONY, BUT NO AFFI-DAVIT OF THE TRUSTEE HAS BEEN SUBMITTED


21.    The instant Motion alleges that "[o]ther 'motives' [of the Trustee]

outside the Bankruptcy Code are neither present nor relevant." (Motion, ¶9).  However,

notably absent is any affidavit attesting that the Trustee did not have any other motives.

As discussed previously, the Original Complaint, Amended Complaint and the Trustee's

litigation tactics all call into question her motives. As also discussed previously, Debtor,

the Court and the creditors are all entitled to a Trustee whose motives are transparent and

unbiased.

22.    Having called into question the Trustee's motives in commencing

this proceeding, Debtor is prepared to present to the Court multiple indicia that the Trus-

tee has acted in bad faith or, at the very least, in total disregard of her duty to the Court

and Debtor to undertake basic due diligence before making wild accusations.

23.    In the face of such indicia, at the very least, the Trustee's motion

seeking to preclude her testimony should have been supported by her own affidavit ex-

plaining her acts so as to demonstrate, in the words of her counsel, that "other 'motives'

are [not] present." The failure to include a supporting affidavit of someone with actual

knowledge, most probably the Trustee, renders this motion defective.[3]

24.    Her allegation regarding the absence of other motives raises a

question of fact, which requires the Trustee's testimony.

25.    The Motion alleges Thus, this Motion, itself, demonstrates that the

Trustee's testimony is necessary.

## NOTICE

26.    Complete copies of this Response have been served upon counsel

to the Trustee and the Office of the United States Trustee.

WHEREFORE, the Debtor respectfully requests that this Court deny the relief

sought in the Motion and that the Debtor be allowed to introduce the testimony of the

Trustee and call her as witnesses at the discharge trial, and granting the Debtor such other

and further relief as may be just.

---

[3]    The Motion in Limine, as originally constituted, also sought to preclude testimony by Gabe DelVirgina alleging that, "the Debtor failed to disclose Mr. Del Virginia as a witness at any time during discovery." (Motion, ¶12). This allegation was shocking as the Trustee had ample notice that Mr. Del Virginia would testify. In the answer to the Complaint, the Debtor explicitly raised the defense of advice of counsel. This allegation is shocking as the Trustee had ample notice that Mr. Del Virginia would testify. In the answer to the Original Complaint, the Debtor explicitly raised the defense of advice of counsel. (Answer to Complaint, ¶21 ECF #8). This advised the Trustee of the same facts as comprising proposed testimony and that Mr. Del Virginia would testify. Furthermore, the Debtor requests the Court take judicial notice that the Debtor identified Mr. Del Virginia as a witness at the pretrial conference before this Court. That portion of the motion has now been withdrawn, with the parties agreeing to tailor the Gabe del Virginia affidavit.

Respectfully Submitted,


Dated          New York, New York
               February 28, 2013

AKERMAN SENTERFITT, LLP


By:
               Donald N. David
               335 Madison Avenue, Suite 2600
               New York, New York 10017
               (212) 880-3800