UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                        :
In re                        :
                        :       Chapter 7
DANIEL GORDON,           :
                        :       Case No. 09-16230 (REG)
              Debtor.     :
                        :
-----------------------------------------------------------x
ANGELA G. TESE-MILNER, TRUSTEE  :
OF THE ESTATE OF DANIEL GORDON,  :
                        :
             Plaintiff,    :
                        :
    -against-             :       Adv. Pro. No. 10-03767 (REG)
                        :
DANIEL GORDON,           :
                        :
             Defendant.   :
-----------------------------------------------------------x

## JOINT PRE-TRIAL ORDER

        The parties, Angela G. Tese-Milner (the "Trustee" or "Plaintiff"), as chapter 7 trustee of the estate of Daniel Gordon and the above-captioned plaintiff, and Daniel Gordon (the "Debtor" or "Defendant"), the above-captioned debtor and defendant, having conferred among themselves and with the Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7016 of the Federal Rules of Bankruptcy Procedure,

        Now, therefore, the following statements, directions and agreements are adopted as the Pre-Trial Order in the above-captioned adversary proceeding:

A.    **Nature of Case**:  This is an action commenced by Plaintiff to deny the Debtor's discharge pursuant to Section 727 of Title 11 of the United States Code (the "Bankruptcy Code").

B.    **Jurisdiction and Venue**:  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1934, and 157(a) and (b).  This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J) and (O).

C.    **Amendments and/or Dismissals**:  The Trustee stipulates to the dismissal with prejudice of the following counts of the Complaint:

- Count I (denial of discharge for concealing property pursuant to Section 727(a)(2) of the Bankruptcy Code) – <u>solely</u> as it relates to Brighton Road Property – all other causes of action asserted in this count remain.

- Count III (denial of discharge for failure to keep recorded information pursuant to Section 727(a)(3) of the Bankruptcy Code);

- Count V (denial of discharge for withholding information and documents pursuant to Section 727(a)(4)(D) of the Bankruptcy Code);

- Count VI ( denial of discharge for failure to explain loss of assets pursuant to Section 727(a)(5) of the Bankruptcy Code);

- Count VII (denial of discharge for failure to court obey pursuant to Section 727(a)(6) of the Bankruptcy Code);

- Count VIII (avoidance and recovery of post-petition transfer pursuant to Sections 549 and 550 of the Bankruptcy Code); and

- Count IX (conversion).

D.    **Relief Requested**:

1.    The Plaintiff seeks to deny the Debtor's discharge for, among other reasons, (i) concealing assets totaling in excess of $3 million, (ii) transferring funds totaling in excess of $4.5 million to insider corporations in the year before the Petition Date, and (iii) making numerous and material false oaths and accounts in connection with his bankruptcy filings.

2.    As set forth in greater detail below, the Trustee seeks the following evidentiary and legal rulings: (i) denial of the Debtor's discharge, pursuant to 11 U.S.C. §

2

727(a)(2), for concealing property of the estate with intent to hinder, delay, or defraud a creditor

or the Trustee, (ii) denial of the Debtor's discharge, pursuant to 11 U.S.C. § 727(a)(2), for

transferring property of the estate with intent to hinder, delay, or defraud a creditor or the

Trustee, and (iii) denial of the Debtor's discharge, pursuant to 11 U.S.C. § 727(a)(4)(A), for

knowingly and fraudulently making false oaths in connection with his bankruptcy proceeding.

**Undisputed Facts**:

a.        **Background**

3.        The Debtor is an individual who at the time of the bankruptcy filing

resided at 151 East 85th Street, #10C, New York, New York.  The rent for this premises was

$19,000 per month.

4.        In or about 2003, the Debtor pled guilty, and was convicted of, the

following felony charges:  (i) wire fraud in connection with a scheme to defraud his employer,

Merrill Lynch, of $43 million, (ii) money laundering, and (iii) conspiracy to defraud the United

States.

5.        Between May 22, 2009 through September 8, 2009, the Debtor leased

property located at 15 Jeffrey Lane, East Hampton, New York.  The total rent for the lease term

was $140,000.

6.        On October 18, 2009 (the "Petition Date"), the Debtor filed a voluntary

petition for relief under chapter 7 of the Bankruptcy Code.

7.        The Plaintiff was appointed interim chapter 7 trustee of the Debtor's

estate, has since qualified and is currently serving as the permanent chapter 7 trustee herein.

8.        Plaintiff is an attorney admitted to practice in the State of New York in

1983.

NY1 632062v1 02/18/13

9.      Plaintiff is also admitted to practice in the United States District Court for the Southern and Eastern Districts of New York and the Bankruptcy Court for the Southern and Eastern Districts of New York.

10.     Plaintiff has acted as Trustee in both Chapter 7 and Chapter 11 proceedings under the Bankruptcy Code.

11.     On November 22, 2009, the Debtor filed his original bankruptcy schedules (the "Schedules") and statement of financial affairs (the "Statement of Financial Affairs") and he verified the contents of these documents under the penalty of perjury.

12.     On February 1, 2010, the Debtor filed his amended statement of financial affairs (the "Amended Statement of Financial Affairs") and he verified the contents of this document under the penalty of perjury.

13.     By complaint dated, September 28, 2010 (the "Complaint"), the Plaintiff commenced the instant adversary proceeding.

14.     On or about October 6, 2010, the Debtor was duly served with a copy of the Complaint.

15.     On December 10, 2010, the Debtor filed his amended bankruptcy schedules (the "Amended Schedules") and second amended statement of financial affairs (the "Second Amended Statement of Financial Affairs") and he verified the contents of these documents under the penalty of perjury.

16.     On December 16, 2010, the Debtor filed his answer (the "Answer") to the Complaint.

NY1 632062v1 02/18/13

17.     At the request of the Debtor's counsel, on or about February 15, 2013, the Trustee amended her complaint (the "<u>Amended Complaint</u>") to incorporate the dismissal of certain causes of action as detailed in Section C above.

b.      **<u>AllStar Capital, Inc. ("AllStar")</u>**

18.     AllStar was incorporated in the State of Nevada on or about January 14, 2008.

19.     AllStar is in the business of making financial investments.

20.     AllStar does not maintain any physical office space or own any physical property, furniture, fixtures or telephones.

21.     At all relevant times, the Debtor was the President and sole officer of AllStar.

22.     AllStar has two shareholders – the Carolina E. Gordon Trust ("<u>CEG Trust</u>") and Gordon Family I, LP ("GFI").  The Debtor is the Trustee of the CEG and possesses a limited partnership interest in GFI.

23.     In or about October 22, 2008, the Debtor made a loan to AllStar in the amount of $2,000,000 (the "<u>AllStar Loan</u>").

24.     The Debtor did not list the AllStar Loan in response to question 10 of his Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs.

25.     Debtor has alleged that AllStar repaid the AllStar Loan prior to the Petition Date by virtue of it making various payments to third parties on behalf of the Debtor and non-AllStar entities at the direction of Debtor.

26.      Said payments were not listed in response to questions 3 and 10 of the Debtor's Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs.

c.      **Wurk Times Square LLC ("Wurk TS")**

27.      Wurk TS was a limited liability company formed in 2008 that operated as a fractional office space provider.

28.      The sole member of Wurk TS was Wurk Environments LLC.

29.      The members of Wurk Environments, LLC were Debtor and GFI.

30.      At all relevant times, the Debtor was the manager and/or person in control of Wurk TS.

31.      Wurk TS ceased operating subsequent to the Petition Date.

32.      Shortly after the Petition Date, Wurk TS paid the Debtor $15,000 (the "Wurk Receivable").

33.      The Debtor did not list the Wurk Receivable on his Schedules.

34.      The Trustee identified this omission in her Complaint and Amended Complaint.

35.      The Debtor listed the Wurk Receivable on the Amended Schedules, which were filed after the Trustee commenced this adversary proceeding seeking to deny Debtor's discharge.

36.      By letter dated August 10, 2011, counsel to the Trustee demanded that the Debtor turn over to the Trustee the value of the Wurk Receivable.  To date, the Debtor has failed to do so.

NY1 632062v1 02/18/13

37.     On or about February 26, 2009, the Debtor caused $500,000 to be transferred from the Debtor's Wachovia Credit Line to Wurk TS (the "Wurk TS Payment").

38.     The Debtor did not list the Wurk TS Payment in response to questions 3 and/or 10 of the Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs.

39.     The Trustee noted this omission in her Complaint and Amended Complaint.

d.    **Tax Overpayment From 2008 Applied to 2009 Tax Liability**

40.     The Debtor's Federal tax transcript reflects a tax overpayment in the amount of $157,978 owed to the Debtor for the tax year ending December 31, 2008 (the "Tax Overpayment").

41.     The Federal tax transcript is not a document filed by or on behalf of Debtor, but represents a document prepared by the IRS and supplied to the Trustee.

42.     The Debtor's Form 1040, for the Tax Year Ending December 31, 2008, (the "Debtor's 2008 Tax Return") was filed prior to the Petition Date.

43.     The Debtor's 2008 Tax Return, filed prior to the Petition Date, directed the application of the overpayment to the 2009 estimated taxes.

44.     The Debtor's 2008 Tax Return never sought a tax refund of the overpayment.

45.     The Debtor did not list the Tax Overpayment on Schedule B of his Schedules or Amended Schedules.

e.    **Citadel Construction Corp. ("Citadel")**

46.     Citadel was a corporation operating as a construction firm.

47.     On or about October 14, 2009, the Debtor entered into a retainer agreement with Todtman, Nachamie, Spitz & Johns, P.C. (the "Retainer Agreement") concerning certain issues related to Citadel, including the sale of a certain interest in Citadel that occurred in February 2009.

48.     The Retainer Agreement was modified by a series of emails dated October 15, 2009, to reflect that GFI was the sole member of McCann Construction, LLC ("McCann"), as opposed to the Debtor.

49.     Citadel was, at the Petition Date, in the process of being wound down.

50.     On or about January 24, 2009, the Debtor caused $350,000 to be transferred from the Debtor's Wachovia Credit Line to Citadel (the "First Citadel Payment").

51.     The Debtor did not list the First Citadel Payment in response to questions 3 and/or 10 of his Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs.

52.     The Trustee identified this alleged omission in her Complaint and Amended Complaint.

53.     On or about January 28, 2009, the Debtor caused $300,000 to be transferred from the Debtor's Wachovia Credit Line to Citadel (the "Second Citadel Payment").

54.     The Debtor did not list the Second Citadel Payment in response to questions 3 and/or 10 of his Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs.

55.     The Trustee identified this alleged omission in her Complaint and Amended Complaint.

f.    **Income and Earnings**

56.    Question 1 to the Statement of Financial Affairs required the Debtor to "State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year."

57.    In the Schedule Debtor filed on November 22, 2009  showed at Schedule I, page 18 of 20, that his monthly gross wages from Rosedale Cooley Management Inc. was $23,077.

58.    In addition, Debtor showed that he received $20,000 per month in in-kind payments.

59.    In Debtor's Second Amended Schedule, filed December 10, 2010, Debtor showed that he received the same amount of moneys on a monthly basis, viz a combined amount of $23,077 in income and $20,000 in in-kind payments.

60.    The Debtor's total earnings from Rosedale Cooley Management, Inc. for the period January 1, 2009 through September 25, 2009 was $224,999.97.

61.    Statement 1 to the Debtor's 2009 Federal tax return indicates that the Debtor received commissions from Citadel in the amount of $347,263 and payments in kind from AllStar in the amount of $62,939.

g.    **Chase Auto Finance**

62.    On the Petition Date, the Debtor was a guarantor of Citadel's obligation owed to Chase Auto Finance on account of an automobile note.

NY1 632062v1 02/18/13

63.    The Debtor did not list Chase Auto Finance on Schedule D or F of his Schedules.

64.    At the 341 Conference on February 25, 2010, Debtor acknowledged the Chase Auto Loan and stated his intent to reflect that error on an amended schedule.

65.    The Trustee identified this omission in her Complaint and Amended Complaint.

66.    Subsequent to the filing of the Complaint, and prior to the filing of the Amended Complaint, the Debtor amended schedule D of his Schedules to include Chase Auto Finance.

h.    **Co-Debtor Obligations**

67.    On the Petition Date, the Debtor was (i) a co-debtor with AllStar on account of a Signature Bank loan, (ii) a co-debtor with Wurk Management on account of a residential lease for the  premises located at 455 West 37th Street, Apt. 1111, New York, New York, (iii) a co-debtor with Rosedale Cooley Management Inc. on account of a residential lease for the premises located at 151 East 85th Street, Unit 10C, New York, New York, and (iv) a co-debtor with Citadel on account of an auto loan for the 2008 Land Rover (collectively, the "Co-Debtor Obligations").

68.    The Debtor did not list the Co-Debtor Obligations on Schedule H to his Schedules.

69.    The Trustee identified these omissions in her Complaint and Amended Complaint.

70.    Subsequent to the filing of the Complaint, the Debtor amended schedule H of his Schedules to include the Co-Debtor Obligations.

NY1 632062v1 02/18/13

71.    Debtor listed his obligation as a guarantor of the Signature Bank loan on Schedule F.

72.    During January 2010, prior to the filing of the Complaint, the Debtor supplied documentation concerning the Wurk residential lease, the Rosedale Cooley residential lease and the Chase Auto loan to the Trustee.

73.    At the 341 Conference on February 25, 2010, Debtor acknowledged that he was a co-debtor on residential leases with Wurk Management and Rosedale Cooley, and guarantor of the Chase Auto Loan and stated his intent to amend the schedule accordingly.

i.    **Transfers in the 90 Days and Two Years Preceding the Petition Date**

74.    The Debtor did not list any payments to creditors in the 90 days prior to the Petition Date in response to question 3 of his Statement of Financial Affairs.

75.    The Debtor solely listed Laura Gordon as having received payments in the 90 days prior to the Petition Date in response to question 3 of his Amended Statement of Financial Affairs.

76.    In her Complaint, the Trustee asserted that, at a minimum, the Debtor made certain payments to American Express totaling at least $36,150.86 in the 90 days prior to the Petition Date.

77.    Subsequent to the filing the Complaint, the Debtor filed his Second Amended Statement of Financial Affairs in which he listed the following transfers in response to question 3:  (i) payments to Laura Gordon, totaling $19,000, (ii) payments to Citicards, totaling $2,757.04, (iii) payments to American Express, totaling $22,343.44, (iv) payments to Geico, totaling $1,288.50, (v) Bear Automotive Gp, totaling $551.80, and (vi) payments to Chase, totaling $292.55.

NY1 632062v1 02/18/13

78.     Inasmuch as the aggregate transfers to each of Citicard, Geico, Bear Automotive and Chase are less than $5,475, those transfer need not have been listed in response to question 3.

79.     The Debtor made the following transfers within two years prior to the Petition Date:  (i) transfers, totaling $49,000, from Debtor's personal Chase bank account to Charles Schwab, representing the Debtor's personal IRA contributions during the period January 2008 through May 2008, and (ii) $25,000 payment to Wachovia Bank on or about May 23, 2008 (collectively, the "Two-Year Transfers").

80.     The Two-Year Transfers were not listed by the Debtor in response to question 10 of his Statement of Financial Affairs or Amended Statement of Financial Affairs. The Trustee identified these omissions in her Compliant.

81.     Subsequent to the filing of the Complaint, the Debtor filed his Second Amended Statement of Financial Affairs and listed the Two-Year Transfers in response to question 10.

j.      **Other Corporate Relationships**

82.     The Debtor did not list Citadel and Cascar, LP ("Cascar") in response to question 18 of his Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs.

83.     Within six years of the Petition Date, the Debtor was a director, officer, shareholder, member, and/or person in control of Citadel and Cascar.

84.     The Debtor did not list any of the following entities in response to question 18 on the Statement of his Financial Affairs or Amended Statement of Financial Affairs: McCann Construction, LLC ("McCann"); Hilltop Investments LLC; Boulder Heights

NY1 632062v1 02/18/13

Owner, LLC; Phoenix Capital Advisors, Inc.; Eastern Energy Group, Inc.; and Kings Holdings, LLC (the "Other Corporate Entities").

85.     The Trustee identified these omissions in her Complaint and Amended Complaint.

86.     Phoenix Capital Advisors, Inc. subsequent to its formation, but prior to the Petition Date,  was renamed Rosedale Cooley Management, Inc.

87.     Rosedale Cooley Management, Inc. was an entity listed on the Schedules.

88.     Subsequent to the filing of the Complaint, the Debtor filed his Second Amended Statement of Financial Affairs and listed the Other Corporate Entities in response to question 18.

k.     **Pending Law Suit**

89.     Question 4 of the Statement of Financial Affairs requires the Debtor to "List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case."

90.     In the Complaint and Amended Complaint, the Trustee claims that on the Debtor was required to list the following lawsuit to which the Debtor was a party as of the Petition Date:  AG/Woo Centre Street Owner, LLC as Counterclaim Plaintiff v. Hanover Insurance Company, Hanover Insurance Group, Daniel L. Gordon, et al. pending under index no. 109319-09 in the Supreme Court of the State of New York, County of New York (the "Pending Law Suit").

91.     The Debtor did not identify the Pending Law Suit in response to question 4 on his Statement of Financial Affairs or Amended Statement of Financial Affairs.

92.    The Trustee identified this omission in her Complaint and Amended Complaint.

93.    The complaint in Citadel Construction Corp. v. AG/WOO Centre Street Owner, LLC, Supreme Court of the State of New York, County of New York, Index Number 109319-09, was filed June 30, 2009.

94.    It contained no claim against Debtor.

95.    The answer of AG/WOO and the Board of Managers of Golden Wheel Condominium was filed and served on August 10, 2009.

96.    That answer did not include a counter-claim against Debtor.

97.    On August 31, 2009 a courtesy copy of an amended answer with a counter-claim against, among others, the Debtor, was provided to Akerman Senterfitt as counsel for Citadel.

98.    As of the Petition Date, the counter-claim had not been served upon Debtor.

99.    Subsequent to the filing of the Complaint, the Debtor filed his Second Amended Statement of Financial Affairs and listed the Pending Law Suit in response to question 4.

l.    **Debtor's Liabilities**

100.    As reflected on the Schedules, as October 22, 2008, through and including the Petition Date, the Debtor had the following liabilities:  (i) various credit card balances in unknown amounts, (ii) monies owed to the United States of America for forfeiture and restitution in an unknown amount, and (iii) taxes due the Internal Revenue Service and the New York State Department of Tax and Finance, which were disputed by the Debtor.

14

E.    **Plaintiff's Contentions of Fact**:

a.    **Background**

1.    In or about August 2009, the Debtor submitted, or caused to be submitted, false documents in connection with his matrimonial action pending before the Honorable Matthew F. Cooper in the Supreme Court for the State of New York, County of New York.

2.    On December 17, 2009, the Trustee filed a motion seeking to compel the Debtor to perform his obligations under the Bankruptcy Code.  The Trustee's motion was approved by order dated February 3, 2010.

3.    The Debtor knowing and fraudulently made numerous and material false oaths in connection with his bankruptcy proceeding.

b.    **AllStar**

4.    The Debtor controls AllStar's day-to-day business operations, signs legal documents on behalf of AllStar, and has signatory capacity over AllStar's bank accounts.  The Debtor also controls AllStar's books and records.

5.    The AllStar Loan remained outstanding as of the Petition Date.

6.    The AllStar Loan was not listed on Schedule B of the Debtor's Schedules or Amended Schedules.

7.    The Debtor concealed the AllStar Loan with the intent to hinder, delay, or defraud a creditor or the Trustee.

8.    On or about April 8, 2009, Rogin Nassau LLC issued an invoice for services rendered on behalf of AllStar, totaling $5,106.53.

9.    The Debtor made certain transfers to AllStar, an insider corporation, with the intent to hinder, delay, or defraud a creditor or the Trustee.

NY1 632062v1 02/18/13

c.    **Wurk TS**

10.    On the Petition Date, Wurk TS owed the Debtor $15,000 (the "Wurk Receivable").

11.    The Debtor concealed the Wurk Receivable with the intent to hinder, delay, or defraud a creditor or the Trustee.

12.    The Debtor made certain transfers to Wurk TS, an insider corporation, with the intent to hinder, delay, or defraud a creditor or the Trustee.

d.    **Tax Overpayment**

13.    The Debtor's tax return and his taxes owing for the tax year ending December 31, 2009 became due after the Petition Date on or about April 15, 2010, at which time the Tax Overpayment would have been applied.

14.    The Debtor concealed the Tax Overpayment with the intent to hinder, delay, or defraud a creditor or the Trustee.

e.    **Citadel**

15.    In or about February 2009, the Debtor sold his interest in Citadel to David Stack for $1 million payable in two traunches, the first traunch of $500,000 due by January 31, 2010 and the balance to be paid by March 31, 2010 (collectively, the "Stack Payments").

16.    The Stack Payments were not disclosed on the Debtor's Schedules or Amended Schedules

17.    The transfer of the interest in Citadel was not listed in response to question 10 of the Debtor's Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs.

NY1 632062v1 02/18/13

18. The Debtor concealed the Stack Payments with the intent to hinder, delay, or defraud a creditor or the Trustee.

19. At all relevant times, the Debtor was a principal and/or person in control of Citadel.

20. The Debtor made certain transfers to Citadel, an insider corporation, with the intent to hinder, delay, or defraud a creditor or the Trustee.

f.  **Wurk Environments, LLC ("Wurk Environments")**

21. Wurk Environments was a limited liability company that was formed to be the sole member of Wurk TS and Wurk Management, LLC.

22. The Debtor and GFI were members of Wurk Environments.

23. Wurk Environments ceased operating on or about the Petition Date.

24. In his Amended Statement of Financial Affairs and Second Amended Statement of Financial Affairs, the Debtor attested to transferring between $1,500,000 and $2,500,000 to Wurk Environments in 2009.

25. The Debtor made certain transfers to Wurk Environments, an insider corporation, with the intent to hinder, delay, or defraud a creditor or the Trustee.

g.  **Income and Earnings**

26. In his Statement of Financial Affairs, Amended Statement of Financial Affairs, and Second Amended Statement of Financial Affairs, the Debtor listed his gross income year-to-date (January 1, 2009 through the Petition Date of October 18, 2009) as approximately $150,000.

NY1 632062v1 02/18/13

27.     In his Statement of Financial Affairs, Amended Statement of Financial Affairs, and Second Amended Statement of Financial Affairs, the Debtor listed his gross income for 2008.

28.     In his Statement of Financial Affairs, Amended Statement of Financial Affairs, and Second Amended Statement of Financial Affairs, the Debtor listed his gross income for 2007, net of losses.

h.      **Other Corporate Relationships**

29.     Within six years of the Petition Date, the Debtor was a director, officer, shareholder, member, and/or person in control of the Other Corporate Entities.

i.      **Pending LawSuit**

30.     As of the Petition Date, the counter-claim had not been served upon Debtor, although negotiations were under way to accept service of process on behalf of the Debtor and others by counsel for Citadel.

j.      **Mass Mutual Life Insurance Application**

31.     On or about June 6, 2009, the Debtor signed a Mass Mutual Life Insurance application.  The copy of the Mass Mutual Life Insurance application that was given to the Trustee contained the Debtor's signature and listed his net worth as more than $20 million.

F.      **Defendant's Contentions of Fact**:

a.      **Background**

1.      By virtue of Plaintiff's experience, she is familiar with alternative forms of entity organization, including but not limited to C corporations, Subchapter S corporations, partnerships, limited liability partnerships, and limited liability companies.

NY1 632062v1 02/18/13

b.       **AllStar**

2.       The AllStar Loan was not listed by Debtor in his Statement of Financial Affairs, Amended Statement of Financial Affairs, or Second Amended Statement of Financial Affairs because by the date the Petition was filed, the AllStar Loan had been more than repaid by AllStar making payments at the direction of Debtor that were in satisfaction of obligations owed either by Debtor or by entities other than AllStar.

3.       On March 1, 2011, in response to a demand by the Trustee that such transactions be identified, Akerman Senterfitt forwarded to counsel for the Trustee an email including a schedule of repayments made by AllStar that were credited against the loan comprising the AllStar Payment from Debtor to AllStar (the "March 1, 2011 Schedule").

4.       A copy of documents supporting the March 1, 2011 Schedule accompanied that email.

5.       The March 1, 2011 Schedule was not prepared by Debtor, but by Akerman Senterfitt.

6.       Upon receipt of the March 1, 2011 Schedule, Debtor advised Donald David, the supervising attorney at Akerman Senterfitt, that the March 1, 2011 Schedule was incorrect.

7.       Debtor advised that the March 1, 2011 Schedule improperly included certain payments made to American Express as a repayment of the AllStar Loan.

8.       Debtor had treated such payments of the American Express bill as income and had reflected them as such on his tax returns.

19

9.      On March 3, 2011, Debtor's counsel advised Andrez Carberry, counsel for the Trustee, of such error and supplied a corrected Schedule in the form of a new email (the "March 3, 2011 Schedule").

10.     The source of the March 1, 2011 Schedule and March 3, 2011 Schedule and supportive materials were documents and financial statements that had previously been exchanged with and provided to the Trustee.

c.     **Wurk TS**

11.     At the time of the filing of the Petition, Debtor was not aware of his entitlement to the Wurk Receivable.

12.     The Wurk TS Payment was not a payment to a creditor.

13.     The Wurk TS Payment was a capital contribution and in the ordinary course of the Debtor's business.

14.     While the Debtor was not obligated to set forth the Wurk TS Payment as it was in the ordinary course of Debtor's business and financial affairs, it was reflected on the amended statement of financial affairs dated February 1, 2010 to provide further disclosure to assist in the administration of the case.

d.     **Tax Overpayment**

15.     Prior to the Petition Date, Debtor sought advice from his bankruptcy counsel as to the proper treatment of his overpayment on Debtor's 2008 Federal Income Tax Return.

16.     On October 1, 2009, Debtor's bankruptcy counsel, Gabriel del Virginia, emailed Debtor and advised Debtor that the proper treatment of the overpayment of Debtor's 2008 taxes was to "apply the overpayments."

17.    The Debtor did not list the Tax Overpayment on Schedule B of his Schedules or Amended Schedules because there was no refund due to Debtor in that Debtor had directed the IRS, prior to the Petition Date, to apply the overpayment to the 2009 Federal Income Taxes.

18.    In doing so, Debtor relied upon the opinion of counsel that applying the overpayment prior to the Petition Date was a proper treatment of the overpayment.

e.    **Citadel**

19.    Citadel was initially formed and owned by McCann.  GFI was the sole member of McCann.

20.    In or about February 2009 McCann sold 50% of its interest in Citadel to David Stack in return for a promissory note, so from that point on Citadel was owned by David Stack (50%) and McCann Construction, LLC (50%).

21.    As of the date of the Retainer Agreement between Debtor and Todtman Nachamie concerning certain issues relating to Citadel, McCann was the fifty percent (50%) shareholder of Citadel.

22.    Chestnut Hill LLC is the General Partner of GFI.

23.    When  McCann sold a 50% interest in Citadel to David Stack, the note provided for $1 million payable to McCann in two traunches, the first traunch of $500,000 due by January 31, 2010 and the balance to be paid by March 31, 2010 (collectively, the "Stack Payments").

24.    As of the date of the Retainer Agreement, McCann was the fifty percent (50%) shareholder of Citadel.

NY1 632062v1 02/18/13

25.    The Stack Payments were not payments that Debtor was entitled to receive, and therefore were not disclosed on the Debtor's Schedules or Amended Schedules.

26.    Citadel ceased operating prior to the Petition Date.

27.    The First Citadel Payment was by Debtor on behalf of Wurk TS.

28.    The First Citadel Payment was not a payment to a creditor of Debtor.

29.    The First Citadel Payment was a capital contribution to Wurk TS and in the ordinary course of the Debtor's business.

30.    While the Debtor was not obligated to set forth the First Citadel Payment as it was in the ordinary course of Debtor's business and financial affairs, it was reflected on the amended statement of financial affairs to provide further disclosure to assist in the administration of the case.

31.    The Second Citadel Payment was by Debtor on behalf of Wurk TS.

32.    The Second Citadel Payment was not a payment to a creditor of Debtor.

33.    The Second Citadel Payment was a capital contribution to Wurk TS and in the ordinary course of the Debtor's business.

34.    While the Debtor was not obligated to set forth the Second Citadel Payment as it was in the ordinary course of Debtor's business and financial affairs, it was reflected on the amended statement of financial affairs to provide further disclosure to assist in the administration of the case.

f.    **Income and Earnings**

35.    In his Statement of Financial Affairs, Amended Statement of Financial Affairs, and Second Amended Statement of Financial Affairs, the Debtor listed his estimated

gross income year-to-date (January 1, 2009 through the Petition Date of October 18, 2009) net of estimated net loss carry-forward.

36.    In his Statement of Financial Affairs, Amended Statement of Financial Affairs, and Second Amended Statement of Financial Affairs, the Debtor listed his gross income for 2008 net of estimated net loss carry-forward.

37.    Debtor had periodically reduced his income from Rosedale Cooley to reflect the changing and challenging business climate.

g.    **Chase Auto Finance**

38.    Debtor did not have immediate access to the documentation concerning the Chase Auto Loan at the time of the preparation of the Petition and Schedules.

39.    Subsequently, upon obtaining such documentation, Debtor immediately provided the Trustee with the documentation concerning the Chase Auto Loan in January 2010, acknowledged his contingent, co-debtor status and stated his intention to amend his Schedule H accordingly and Debtor amended said schedule.

h.    **Co-Debtor Obligations**

40.    Debtor did not have immediate access to the documentation concerning the Wurk residential lease at the time of the preparation of the Petition and Schedules.

41.    Debtor inadvertently omitted the Rosedale Cooley residential lease as Debtor believed that Rosedale Cooley, as lessee, as the sole obligor thereon as Rosedale Cooley was making direct payments to the landlord on account of the rent.

42.    Subsequently, upon obtaining such documentation, Debtor immediately provided the Trustee with the documentation concerning the Wurk residential lease and the Rosedale Cooley residential lease in January 2010, acknowledged his contingent, co-debtor

status and stated his intention to amend his Schedule H accordingly and Debtor amended said schedule.

i.      **Transfers in the 90 Days and Two Years Preceding the Petition Date**

43.     Debtor's failure to list payments in excess of $5,000 in the aggregate to payee Laura Gordon and payee American Express was inadvertent.

44.     The payments made to Laura Gordon were domestic support obligations and were reflected in Schedule J.

45.     Within two years prior to the Petition Date, Debtor made transfers totaling $49,000 from Debtor's personal Chase bank account to Charles Schwab, representing the Debtor's personal IRA contributions during the period January 2008 through May 2008.  Such transfers to Debtor's IRA had historically been made in the ordinary course of Debtor's financial affairs.

46.     Within two years prior to the Petition Date, Debtor made a $25,000 payment to Wachovia Bank on or about May 23, 2008.  Debtor had historically made payments on the HELOC in the ordinary course of his financial affairs.

j.      **Other Corporate Relationships**

47.     Pursuant to the terms of the Separation Agreement, Debtor was a partner in name only of Cascar.

48.     Citadel never elected any officer other than David Stack as President, and Debtor was not an elected officer or Director of Citadel.

49.     Citadel was, at the Petition Date, in the process of being wound down.

50.     The Trustee identified the Other Corporate Entities in her Complaint and Amended as entities which Debtor was required to list by reason of his ownership.

24

51.     Debtor resigned as an officer and director of Eastern Energy Group, Inc. in 2001.

52.     Kings Holdings, LLC ceased operations in September 2003 upon the sale of its sole asset (the stock in Daticon, Inc.).  Though the entity was not legally dissolved until a later date, Kings Holdings, LLC had no operations after September 2003.

k.     **Pending Law Suit**

53.     As of the Petition Date, the counter-claim in the Pending Law Suit had not been served upon Debtor, and, thus, the action against Debtor on the counter-claim had not yet been commenced.

l.     **Mass Mutual Life Insurance Application**

54.     At the time at which Debtor signed the application it did not set forth his net worth.

55.     The handwriting on the Mass Mutual Life Insurance Application showing a net worth of $20 million is not in Debtor's handwriting.

56.     The balance of the application, including the indicated net worth, was completed by Rachel Avidan, assistant to the soliciting producer, Corey Schneider or by someone else in Mr. Schneider's office.

57.     The $20 million net worth was Mr. Schneider's estimate of Debtor's net worth based upon Mr. Schneider's estimate of the value of two stock exchange seats he believed Debtor to own

58.     The $20 million net worth listed on the application was not verified with Debtor.

NY1 632062v1 02/18/13

G.      **Issues of Law**:

1.      Whether the Debtor's discharge should be denied, pursuant to 11 U.S.C. § 727(a)(2), for concealing property of the estate with intent to hinder, delay, or defraud a creditor or the Trustee?

2.      Whether the Debtor's discharge should be denied, pursuant to 11 U.S.C. § 727(a)(2), for transferring property of the estate with intent to hinder, delay, or defraud a creditor or the Trustee?

3.      Whether the Debtor's discharge should be denied, pursuant to 11 U.S.C. § 727(a)(4)(A), for knowingly and fraudulently making false oaths in connection with his bankruptcy proceeding?

4.      Does the Debtor's  omission of the Tax Overpayment based upon the Debtor's reasonable and good faith reliance upon the honest advice of his bankruptcy counsel regarding the complex intersection of Bankruptcy and Federal Tax Laws constitute a fraudulent omission so as to result in the denial of discharge pursuant to Section 727(a)(4)?

5.      Did the Debtor's omission that he was the guarantor of the Wurk residential lease, the Rosedale Cooley residential lease and the Chase Auto loan from his Schedules based upon his reasonable belief that the primary obligors were the sole obligors of those debts constitute a fraudulent omission so as to result in the denial of discharge pursuant to Section 727(a)(4)?

6.      Does the Debtor's inadvertent omission of the domestic support obligation made to Laura Gordon in the 90 days prior to the Petition Date in response to question 3 of his Statement of Financial Affairs (even though he listed such payment on Schedule I) and his

26

inadvertent failure to list payment to American Express constitute a fraudulent omission so as to result in the denial of discharge pursuant to Section 727(a)(4)?

7. Did the Debtor's omission of the Wurk Receivable from his Schedules which he was not aware at the time he filed his Schedules and his treatment of the receivable based upon the Debtor's reasonable and good faith reliance upon the honest advice of his bankruptcy counsel constituted fraud so to as to result in the denial of discharge pursuant to Section 727?

8. Does the Debtor's scheduling his income year-to-date as approximately $150,000 because he reasonably believed that he was supposed to include his estimated net loss carry-forward in his income year-to-date and scheduled his year-to-date income of approximately $224,000.00 on Schedule I (demonstrating that he was not attempting to conceal any income), constitute a fraudulent omission so as to result in the denial of discharge pursuant to Section 727(a)(4)?

9. Did the Debtor's omission that he was a partner in Cascar his Statement of Financial Affairs when pursuant to the terms of the Separation Agreement the Debtor was a partner in name only constitute a fraudulent omission so as to result in the denial of discharge pursuant to 727(a)(4)?

10. Does the Debtor's (i) scheduling his gross income year-to-date as approximately $150,000, (ii) the omission that he was a guarantor on certain debts, (iii) omission of his membership in a partnership in which he was a partner in name only and (iv) inadvertent omission of domestic support obligations to Laura Gordon on the Statement of Financial Affairs while including such payments on Schedule I bear a relationship to the Debtor's business transactions or estate, or concern the discovery of assets, business dealings, or

the existence and disposition of the debtor's property to constitute a material omission for the purposes of denial of discharge pursuant to Section 727(a)(4)?

11.    Could the Debtor have received any conceivable benefit from (i) his listing of his gross income year-to-date as approximately $150,000, (ii) the omission that he was a guarantor on certain debts, (iii) omission of his membership in partnership in which the Debtor was a partner in name only and (iv) his inadvertent omission of domestic support obligations to Laura Gordon on the Statement of Financial Affairs?

H.    **Separate Trial Issues**:

1.    None.

I.    **Previous Substantive Motions**:

1.    There have been no previous substantive motions in this case.

J.    **Witnesses**:

| Plaintiff's Witnesses | Defendant's Witnesses |
|---|---|
| Mr. Daniel Gordon | Mr. Daniel Gordon |
| Donald David, Esq. | Angela Tese-Milner, Esq. |
| | Gabriel del Virginia, Esq. |
| | Bart Nachamie, Esq. |
| | Corey Schneider |

K.    **Expert Witnesses**:

| Plaintiff's Expert Witnesses | Defendant's Expert Witnesses |
|---|---|
| None | None |

L.    **Exhibits**:

**Exhibits Stipulated to Be Admissible**:

1.    Lease for the property located at 151 East 85th Street, #10C, New York, New York.

NY1 632062v1 02/18/13

2.      Docket for criminal proceeding entitled <u>USA v. Gordon</u> (U.S. District Court for the Southern District of New York Case No. 1:03-cr-01494-NRB-1).

3.      July 2010 email chain among the Debtor, Donald David, Esq. and Yann Geron, Esq. regarding the leased property located at 15 Jeffreys Lane, East Hampton, New York and related attachment entitled "Lease Agreement".

4.      Discharge Complaint, dated September 28, 2010 [Adv. Pro. Document No. 1].

5.      Answer to Discharge Complaint, dated December 15, 2010 [Adv. Pro. Document No. 12].

6.      Amended Complaint, dated February 15, 2013 [Adv. Pro. Document No. 48].

7.      Defendant's Response and Objections to Plaintiff's First Set of Interrogatories, dated May 10, 2011.

8.      Wachovia check no. 103, dated October 22, 2008, made payable to "Cash", in the amount of $2,000,000.

9.      Minutes of Organizational Meeting of Directors of AllStar, dated January 15, 2008.

10.     Debtor's Affidavit in Opposition to Application by Trustee for a Preliminary Injunction, dated December 27, 2010 [Adv. Pro. 10-03766, Document No. 24].

11.     Response of AllStar to Trustee's Request for Admissions, dated May 5, 2011.

NY1 632062v1 02/18/13

12.     Debtor's Affidavit in Support of Defendant's Motion for Summary Judgment on Trustee's Complaint Against AllStar, dated May 11, 2011 [Adv. Pro. 10-03766, Document No. 44].

13.     Email from Donald David, Esq. to Andrez Carberry, Esq., dated March 1, 2011, and attachment entitled "AllStar Capital, Inc. Loan Repayments to Daniel Gordon".

14.     Email from Donald David, Esq. to Andrez Carberry, Esq., dated March 3, 2011, and attachment entitled "[Corrected] AllStar Capital, Inc. Loan Repayments to Daniel Gordon".

15.     Affirmation of Donald David, Esq. in connection with the non-discharge adversary proceeding, dated September 19, 2012.

16.     Rogin Nassau LLC invoice, dated April 8, 2009, to AllStar in the amount of $5,106.53.

17.     Memo from Debtor re August 18, 2010 Document Production Requests.

18.     Chase bank statement for Wurk-Times Square LLC's account no. xxxxx for the period October 1, 2009 through October 30, 2009.

19.     Debtor's Affidavit, dated September 20, 2010.

20.     Letter from Andrez Carberry, Esq. to Donald David, Esq., dated August 10, 2011.

21.     Internal Revenue Service Account Transcript for the tax period December 31, 2008.

22.     Paychex report for Rosedale Cooley Management Inc. for the period January 1, 2009 through September 25, 2009.

23.     Statement 1 to Debtor's 2009 Federal tax return.

NY1 632062v1 02/18/13

24.    Debtor's bankruptcy schedules, dated November 22, 2009 [Main Case, Document No. 22].

25.    Debtor's amended bankruptcy schedules, dated December 8, 2010 [Main Case, Document No. 89].

26.    Debtor's statement of financial affairs, dated November 22, 2009 [Main Case, Document No. 23].

27.    Debtor's amended statement of financial affairs, dated February 1, 2010 [Main Case, Document No. 45].

28.    Debtor's second amended statement of financial affairs, dated December 8, 2010 [Main Case, Document No. 90].

29.    Letter, dated October 14, 2009, from Todtman, Nachamie, Spizz & Johns, P.C. to the Debtor regarding Citadel, as modified by exchange of emails dated October 15, 2009.

30.    Wachovia check no. 104, dated January 24, 2009, made payable to "Citadel Construction Corp", in the amount of $350,000.

31.    Wachovia check no. 105, dated January 28, 2009, made payable to "Citadel Construction", in the amount of $300,000.

32.    Wachovia check no. 107, dated February 6, 2009, made payable to "Wurk Times Square, LLC", in the amount of $500,000.

33.    Performance bond, dated March 26, 2008, signed by the Debtor as Secretary of Citadel.

34.    Payment bond, dated March 26, 2008, signed by the Debtor as Secretary of Citadel.

NY1 632062v1 02/18/13

35.     Standard Form to Confirm Account Balance Information with Financial Institution [Signature Bank] signed by the Debtor on behalf of Citadel on January 9, 2008.

36.     Standard Form to Confirm Account Balance Information with Financial Institution [Commerce Bank, N.A.] signed by the Debtor on behalf of Citadel on January 9, 2008.

37.     Standard Form to Confirm Account Balance Information with Financial Institution [Signature Bank] signed by the Debtor on behalf of Citadel on January 8, 2009.

38.     Retainer letter, dated January 7, 2008, to F. Robert LaSaracina CPA, LLC signed by the Debtor on behalf of Citadel.

39.     Letter, dated January 15, 2008, regarding audit signed by the Debtor on behalf of Citadel.

40.     Letter, dated May 1, 2008, confirming services to be rendered by F. Robert LaSaracina CPA, LLC on behalf of Citadel and signed by the Debtor.

41.     Unconditional Waiver and Release Upon Progress Payment signed by the Debtor on behalf of Citadel.

42.     Signature card statement listing the Debtor as an authorized signatory for Citadel.

43.     Rogin Nassau LLC invoice, dated February 16, 2007, relating to services performed in connection with "Citadel Construction Corporation Sublease" and addressed to the Debtor at USP Leavenworth.

44.     Signature Bank check no. 3138, dated March 18, 2008, made payable to "NYS Sales Tax Processing", in the amount of $3,193.97, signed by the Debtor on behalf of Citadel.

NY1 632062v1 02/18/13

45.     Signature Bank check no. 4101, dated July 22, 2008, made payable to "New Country Audi of Greenwich", in the amount of $4,609.99, signed by the Debtor on behalf of Citadel.

46.     Citadel's New York State and Local Quarterly Sales and Use Tax Return for the tax period December 1, 2007 through February 29, 2008.

47.     New York State and Local Quarterly Sales and Use Tax Return for the tax period June 1, 2008 through August 31, 2008, signed by the Debtor on behalf of Citadel.

48.     Agreement of Limited Partnership of Cascar, LP, dated December 5, 2005.

49.     Separation agreement, dated on or about November 16, 2006.

50.     Letter and Partnership Resolution, dated February 4, 2008, authorizing the transfer of NYMEX stock signed by the Debtor as General Partner of Cascar.

51.     First amendment to separation agreement, dated March 26, 2008.

52.     Defendant's Statement of Undisputed Facts Pursuant to Local Rule 7056(1)(b), dated May 17, 2011.

53.     Transcript of Hearing on Laura Gordon's Motion for a Temporary Restraining Order on December 7, 2009 [Adv. Pro. No. 09-01902, Document No. 11].

54.     Transcript of Meeting of Creditors on February 25, 2010.

55.     Transcript of Bankruptcy Rule 2004 examination of AllStar by the Debtor on May 6, 2010.

56.     Transcript of Deposition of the Defendant on July 25, 2011.

57.     Rogin Nassau Invoice 83575, dated January 31, 2009.

58.     McCann 2006 Form 1065 Tax Return, dated November 19, 2008, showing the sole member as GFI..

NY1 632062v1 02/18/13

59.     Debtor Form 1040, Federal Income Tax Return, 2008, filed October 1, 2009.

60.     Email dated October 1, 2009 from Gabriel del Virginia to Dan Gordon advising that it was proper to apply the overpayment of taxes in 2008 to the 2009 Federal Income Tax liability in a tax return filed prior to the Petition Date.

61.     Printout from Connecticut Secretary of State website concerning Hilltop Investments, LLC.

62.     Printout from Connecticut Secretary of State website concerning Eastern Energy Group, Inc.

63.     Complaint in Citadel Construction Corp. v. AG/WOO Centre Street Owner, LLC, Supreme Court of the State of New York, County of New York, Index Number 109319-09, which was filed June 30, 2009.

64.     Application and Certificate for Payment, dated December 19, 2008, from Citadel Construction Corp. to WURK Times Square, LLC.

65.     Change of name of Phoenix Capital Advisors to Rosedale Cooley Management, Inc., dated July 14, 2009.

66.     June 4, 2009 print out of the NYS Department of State, Division of Corporations, for Citadel Construction Corp.

67.     February 28, 2008, Agreement of Indemnity, between Hanover Insurance Co. and Citadel Construction Corp.

68.     April 4, 2010, Claim filed by Hanover Insurance Co., in connection with instant Chapter 7 proceeding.

NY1 632062v1 02/18/13

69.    Response to DASNY Questionnaire filed by Citadel Construction Corp. showing its ownership structure.

70.    Florida documents pertaining to officers, directors and shareholders of Citadel Construction Corp.

**Plaintiff's Proposed Additional Exhibits**:

1.    Letter, dated August 27, 2009, from counsel to Laura Gordon to the Honorable Matthew Cooper advising that the Debtor submitted false documents in connection with his matrimonial proceeding.

2.    Trustee's motion, dated December 17, 2009, seeking to compel the Debtor to perform his duties under the Bankruptcy Code [Main Case, Document No. 29].

3.    Order, dated February 3, 2010, directing the Debtor to perform his duties under the Bankruptcy Code [Main Case, Document No. 47].

4.    Application to Mass Mutual Life Insurance Company, dated June 6, 2009, 2009, as allegedly modified by the submitting broker without further review by Debtor.

**Defendant's Proposed Additional Exhibits:**

1.    Transcript of Deposition of Angela Tese-Milner, May 11, 2011, inclusive of confidential portion.

2.    Transcript of Deposition of Mass Mutual by Corey Schneider on June 29, 2011.

3.    Objection to Trustee's Proposed Sale of Old Lyme, CT property dated October 19, 2011, with exhibits.

M.    **Requested Evidentiary Rulings**:

1.      Plaintiff's motion to preclude the testimony of Angela Tese-Milner, Esq. and Gabriel del Virginia, Esq.

2.      Defendant's motion to preclude the introduction into evidence of Letter, dated August 27, 2009, from counsel to Laura Gordon to the Honorable Matthew Cooper advising that the Debtor and/or his matrimonial counsel submitted false documents in connection with his matrimonial proceeding.

N.      **Trial Counsel**:

| Plaintiff's Counsel | Defendant's Counsel |
|---|---|
| Fox Rothschild LLP<br>Yann Geron<br>Nicole N. Santucci (Of Counsel)<br>Barri A. Frankfurter<br>100 Park Avenue, Suite 1500<br>New York, New York 10017<br>Tel: (212) 878-7900 | Akerman Senterfitt LLP<br>Donald N. David<br>335 Madison Avenue, Suite 2600<br>New York, New York 10017<br>(212) 880-3800 |

O.      **Estimation of Trial Time**:

| Plaintiff's Estimate | Defendant's Estimate |
|---|---|
| One day | Two Days |

P.      **Trial Date**:  March 12-13, 2013, commencing at 9:45 a.m.

Q.      **Trial Memorandum of Law**:  After the trial, if requested by the Court, or authorized by the Court upon the request of a party, the parties shall submit proposed findings of fact and conclusions of law, with supporting legal authority.

R.      **Modification of Order**:  The Court may, in order to prevent manifest injustice or for good cause shown, upon application of counsel for either party, made in good faith, or upon motion of the Court, modify this Pre-Trial Order upon such conditions as the Court may deem just and proper.

NY1 632062v1 02/18/13

Dated:   New York, New York
         **_March 12, 2013_**

                                    _s/ Robert E. Gerber_
                                    HONORABLE ROBERT E. GERBER
                                    UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND SUBSTANCE:**

Dated:   New York, New York
         February 20, 2013

FOX ROTHSCHILD LLP                   AKERMAN SENTERFITT, LLP
Attorneys for Plaintiff/Trustee      Attorneys for the Debtor/Defendant

By:   _/s/ Nicole N. Santucci_       By:    _/s/ Donald N. David_
      Yann Geron                            Donald N. David
      Nicole N. Santucci (Of Counsel)       335 Madison Avenue, Suite 2600
      Barri A. Frankfurter                  New York, New York 10017
      100 Park Avenue, Suite 1500           (212) 880-3800
      New York, New York 10017
      (212) 878-7900

NY1 632062v1 02/18/13